UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x
CONAN PROPERTIES INTERNATIONAL
LLC, ROBERT E HOWARD PROPERTIES
INC.,

               Plaintiffs,

   -against-

RICARDO JOVE SANCHEZ,

               Defendant.
---------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 1:17-cv-00162-FB-RLM

*Appearances*:
*For Plaintiff*:
FRANK DAVID D'ANGELO
WOOK HWANG
Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154

*For Defendants*:

**BLOCK, Senior District Judge:**

Conan Properties International LLC ("CPI") and Robert E. Howard Property Inc. ("REH") (collectively, "plaintiffs") sued Ricardo Jové Sanchez for copyright and trademark infringement under 17 U.S.C. § 106 and 15 U.S.C. § 1125(a).[1] Sanchez, who is a resident of Spain, failed to appear, and plaintiffs moved for default judgment. Magistrate Judge Roanne L. Mann issued an 85-page Report and Recommendation

---

[1] Plaintiffs also claimed a violation of New York unfair competition law. They have not objected to the Magistrate Judge's recommendation that it be denied, and the denial was not clear error. *See Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) ("[W]here no objections to the Report and Recommendation have been filed, the district court 'need only satisfy itself [] that there is no clear error on the face of the record.'"). The Court therefore adopts the R&R's recommendation to deny that claim without further discussion.

("R&R") recommending that the Court partially grant and partially deny the motion. For the following reasons, the Court adopts the R&R with several modifications.

I

CPI and REH own copyrights and trademarks in pulp fiction novels, comic books, and graphic novels written by Robert E. Howard in the 1930s. They feature Conan the Barbarian and, as relevant here, six other characters: (1) Kull; (2) Ironhand, also known as Esau Cairn; (3) Bran Mak Morn; (4) Dark Agnes; (5) Solomon Kane; and (6) El Borak (collectively, minus Conan, "REH Characters").[2] CPI owns the rights to Conan and REH owns the rights to the REH Characters. Plaintiffs allege that Sanchez violated their rights by manufacturing, displaying, and selling (or offering for sale) miniature sculptures of these copyright-protected characters on Facebook and Kickstarter. Sanchez offered the sculptures for prices ranging from €27 (about $31) to €10,000 (about $11,425). Plaintiffs submitted a takedown notice under the Digital Millennium Copyright Act ("DMCA") to compel Kickstarter to remove the sculptures, and Sanchez filed a counter-notice, causing them to remain. Plaintiffs filed this suit, seeking $70,000 in damages and a permanent injunction. When Sanchez failed to appear, the clerk entered default and the plaintiffs moved for a default judgment.

---

[2] Plaintiffs asserted protection for eleven characters in their Complaint but narrowed that number to seven (including Conan) in their default judgment submissions. The Court considers plaintiffs' claims abandoned to the extent they relate to characters other than the seven listed here. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014).

2

The Court referred the motion to the Magistrate Judge, who found liability as to three of the characters: El Borak, Solomon Kane, and Kull. She reasoned plaintiffs failed to allege that the remaining characters, including Conan, were sufficiently original or distinct to warrant copyright protection. The Magistrate Judge also found liability for trademark infringement.[3] Finally, she recommended an award of $3,000 in statutory damages for each of the three unlawfully copied characters and the denial of injunctive relief.

Plaintiffs object to the recommendations regarding copyright liability for the remaining characters, damages, and injunctive relief. The Court reviews these portions of the R&R de novo. *See* 28 U.S.C. § 636(b)(1); *Shim v. Millennium Grp.*, 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010).

## II

A party's default "constitute[s] a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). To determine whether plaintiff's allegations are well pleaded, the Court applies the same standards that govern a motion to dismiss under Rule 12(b)(6). *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014). Thus, the complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp.*

---

[3] The Magistrate Judge's finding of trademark liability was based on Sanchez's use of the following registered marks: CONAN, DARK AGNES, EL BORAK, and SOLOMON KANE.

*v. Twombly*, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs argue that the Magistrate Judge erroneously departed from these pleading standards. The Court agrees.

Courts in this circuit require a copyright complaint to allege: "(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant infringed the copyright." *Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 338 (S.D.N.Y. 2015); *Patrick Collins, Inc. v. John Doe 1*, 945 F. Supp. 2d 367, 374 (E.D.N.Y. 2013).[4] The Complaint meets these requirements.

**A. Subject of the Copyright Claims**

The Complaint contains an exhaustive list of "specific original works that are the subject of the copyright claim." *See* Compl. ¶ 10. These include seven original literary works in which Conan first appeared, *see id.* Ex. B, and "numerous other

---

[4] In *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991), the Supreme Court stated, on review of a summary judgment decision, that a copyright claim requires proof of "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." The first three elements listed in the text correspond to the first item in *Feist*, and the fourth element corresponds to the second. At the pleading stage, the plaintiff "need not specify which individual elements within the work are protected" because the certificate of registration is "prima facie evidence of the work's originality." 6 *Patry on Copyright* § 19:5 (citing 17 U.S.C. § 410).

works," such as comic books and graphic novels, in which he has been portrayed, *id.* ¶ 11, Ex. C. The subject works also include about 90 works in which "one or more of the REH characters" are portrayed. *Id.* ¶ 12 Ex. D. All of these works are listed by name and copyright registration number. *Id.* Exs. B-D. The Complaint further alleges which parts of those works are the subject of the claims by specifying the particular infringed characters by name. *See id.* ¶ 8. Plaintiffs plausibly alleged which works are the subject of their claims.[5]

**B. Ownership and Registration of Copyright in the Works**

"Production of a certificate of registration made before or within five years after first publication of the work constitutes prima facie evidence of the validity of the copyright." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 88–89 (2d Cir. 2016) (citing 17 U.S.C. § 410(c)). At the pleading stage, courts have accepted the registration number alone. 6 William F. Patry, *Patry on Copyright* § 19:4 (Mar. 2018) (collecting cases); *see, e.g.*, *Basevi, Inc. v. Acorn Co.*, 2009 WL 764532, at *4 (C.D. Cal. Mar. 19, 2009) (providing registration numbers sufficient); *Bartell v. Onbank, Onbank & Tr. Co.*, 1996 WL 421189, at *3 (N.D.N.Y. July 19, 1996) (granting leave to amend by adding registration numbers to complaint).

---

[5] This level of specificity is sufficient to distinguish this case from one relied on by the Magistrate Judge, *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*, 149 F. Supp. 3d 1167, 1170 (N.D. Cal. 2015). The plaintiffs there merely stated that "dozens" and "almost every one" of defendants' characters copied a character from plaintiffs' works while naming only three specific examples. 149 F. Supp. 3d at 1170.

Here, the Complaint alleges ownership of the copyright in each of the underlying works in which the characters first appeared and lists the registration number for each. *See* Compl. ¶¶ 10-12, Exs. B-D. In supplemental submissions, plaintiffs include copies of the certificates of registration and a declaration by Fredrik Malmberg, a representative of both plaintiffs, describing transfer of the copyrights in the underlying works from the successors and heirs of Robert E. Howard to the plaintiffs. *See* Malmberg Decl. Exs. 1-7. This is more than enough to satisfy the ownership and registration elements.

For the purpose of demonstrating ownership of a valid copyright covering the *characters*, the Magistrate Judge disregarded the copyright registrations in the underlying works, assuming that only registration of the characters themselves would suffice. *See, e.g.*, R&R at 14. Given that the Copyright Office does not separately register characters, the Magistrate Judge reasoned that plaintiffs must instead allege copyright ownership by providing detailed descriptions of the characters' "metes and bounds." *Id.* at 22; *see also id.* at 13-14, 19, 28 (regarding plaintiff's additional burden for unregistered works). The Magistrate Judge therefore held that plaintiffs' copyrights in the characters were invalid because they were not sufficiently delineated to receive copyright protection. *See id.* at 15-34.

That conclusion erroneously treats characters as separate and distinct copyright subject matter, divorced from the works in which they are embodied. To be sure,

courts outside this circuit lend some support to that view.[6] However, the Second Circuit recognizes that copyright protection for characters is a result of their embodiment in original works of authorship. *See Warner Bros. Inc. v. Am. Broad. Companies, Inc.*, 720 F.2d 231, 235 (2d Cir. 1983) ("Plaintiffs own the copyrights in various works embodying the character Superman and have thereby acquired copyright protection for the character itself."); *Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 519 F. Supp. 388, 391 (S.D.N.Y. 1981), *aff'd*, 683 F.2d 610 (2d Cir. 1982) ("[C]haracters that are well-delineated in the Tarzan works of Edgar Rice Burroughs are protected from infringement by the copyright in the work itself."). Because the characters are elements of the underlying literary and graphic works in which they appear, plaintiffs' copyright registration in the underlying works satisfies the requirement that they plead ownership and registration of valid copyrights.

The Magistrate Judge correctly observed that a character will not receive copyright protection unless it is "distinctively delineated." R&R at 21 (citing, *inter*

---

[6] A widely recognized example is *Warner Bros. Pictures v. Columbia Broad. Sys.*, 216 F.2d 945, 950 (9th Cir. 1954), where the court held that transfer of the copyright in a story did not include exclusive rights to use the story's characters unless they "really constitute[d] the story being told." The Seventh Circuit called that decision "wrong," *Gaiman v. McFarlane*, 360 F.3d 644, 660 (7th Cir. 2004), and the Second Circuit stated that a broad reading of it would contradict public policy and "effectively permit the unrestrained pilfering of characters," *Goodis v. United Artists Television, Inc.*, 425 F.2d 397, 406 (2d Cir. 1970). Even the Ninth Circuit has abandoned its suggestion that characters are separate and distinct from the underlying work. *See, e.g.*, *Walt Disney Prods. v. Air Pirates*, 581 F.2d 751, 754 (9th Cir. 1978) ("The fact that [Disney's] characters are not the separate subject of a copyright does not preclude their protection, however, because Section 3 of the then Copyright Act provided that Disney's copyrights included protection for 'all the copyrightable component parts of the work copyrighted.'").

7

*alia*, *Silverman v. CBS Inc.*, 870 F.2d 40, 50 (2d Cir. 1989)). However, the Court shares Professor Nimmer's view that questions regarding the scope of character delineation and protection "belong not to [a] discussion of copyright's subject matter but, instead, to the inquiry into substantial similarity." 1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 2.12[A][1] (Rev. ed. 2018). The issue of substantial similarity is "[s]ubsumed within the fourth element—infringing acts," *McDonald v. K-2 Indus., Inc.*, 108 F. Supp. 3d 135, 139 (W.D.N.Y. 2015) (citing *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010)), and will be discussed further below.

By requiring plaintiffs to plead specific facts showing their entitlement to a separate and distinct copyright in their characters, the Magistrate Judge improperly heightened the pleading requirements under *Twombly*, *Iqbal*, and Rule 12(b)(6). Plaintiffs plausibly alleged that they owned a valid, registered copyright in the characters by virtue of their copyright in the underlying works.

**C. Defendant's Acts of Infringement**

Plaintiffs were required to allege how and when Sanchez infringed their copyrights. They alleged that, "during the three-year period preceding the filing of this action," Compl. ¶ 34, Sanchez (1) manufactured and distributed unauthorized statues of Conan and the REH Characters on Kickstarter (or offered to do so), *id.* ¶ 21; (2) publicly displayed images of the unauthorized statues on Kickstarter and Facebook,

*id.* ¶ 22; and (3) publicly displayed other images of Conan and the REH Characters, including a picture of Conan as depicted by Arnold Schwarzenegger in a film poster from the 1980s, *id.* ¶ 30. Exhibits attached to the Complaint include screen shots of the statue images as they appeared on Kickstarter and Facebook. *Id.* Exs. F-G. Although plaintiffs did not allege the precise date of the infringement, the Facebook screen shots include the month and day, and no more is required. *See Elektra Entm't Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 239 (S.D.N.Y. 2008) ("The Complaint does not affix a date or time of each instance of alleged infringement, but it need not do so in order to survive a motion to dismiss."). It would be impracticable to require plaintiffs to plead the date the statues were manufactured; few people other than Sanchez likely know that information. *Cf. Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 339 (S.D.N.Y. 2015) (not requiring plaintiff to plead information within the defendant's sole possession).

These allegations are sufficient to plausibly allege how and when the infringement occurred. *See Chanel, Inc. v. Louis*, 2009 WL 4639674, at *4 & n.1 (E.D.N.Y. Dec. 7, 2009) (Ross, J.) (finding liability for default judgment based on allegations that defendant copied and sold plaintiff's fashion designs).

The Magistrate Judge found no liability as to four of the characters because plaintiffs did not make detailed allegations regarding which aspects of the characters were original and thus protectable. As explained above, these questions are part the

9

inquiry into "substantial similarity"—that is, whether "the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff[s']." *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999). Substantial similarity and originality are questions of fact. *See Gaito*, 602 F.3d at 63; *Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 674, 681 (2d Cir. 1998). By alleging that Sanchez's sculptures and images were infringing copies of the characters in plaintiffs' works, plaintiffs plausibly alleged that the similarities between the two were substantial. On the present motion, as on a motion to dismiss, the Court accepts those allegations as true. *See Cty. of Suffolk, New York v. First Am. Real Estate Sols.*, 261 F.3d 179, 184 (2d Cir. 2001) (substantial similarity alleged based on general assertions of originality and copying of tax maps).

Courts have inquired further into substantial similarity on a motion to dismiss "when a defendant raises the question of substantial similarity at the pleadings stage . . . ." *Gaito*, 602 F.3d at 64 (collecting cases). And courts have required specific allegations regarding substantial similarity when the complaint leaves doubt about what protectable aspects of the plaintiff's work allegedly have been infringed. *See, e.g.*, *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 442-43 (S.D.N.Y. 2012) (dismissing copyright claim by jewelry maker who failed to allege which particular elements of the subject rings were protected or copied).

Here, by contrast, the issue of substantial similarity has not been raised, and the Complaint leaves no doubt about which parts of plaintiffs' works underlie their infringement claims. The plaintiffs plausibly allege that Sanchez's sculptures and images infringe the seven characters listed by name in their Complaint.[7]

The Court adopts the R&R insofar as it found liability for copyright infringement regarding El Borak, Solomon Kane, and Kull. However, it modifies the R&R to find liability based on the four remaining characters: Conan, Ironhand (also known as Esau Cairn), Bran Mak Morn, and Dark Agnes.

The Court also adopts, without objection, the R&R's finding of liability for trademark infringement, which was without error. *See Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd.*, 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (absent objections, R&R is reviewed for clear error).

---

[7] Even if a demanding exploration of substantial similarity were appropriate at this stage, the Court cannot condone the approach taken in the R&R, which deems the characters insufficiently delineated but makes no reference to the plaintiffs' written works in which they appear. However, in any examination of substantial similarity, "the works themselves supersede and control contrary descriptions of them." *Gaito*, 602 F.3d 64. A proper examination of the works themselves casts serious doubt on the R&R's description of the characters. For example, the R&R states that we know nothing of Dark Agnes's "habits, passions, background, and other intricacies or quirks." R&R at 29. But in *Blades for France*, attached to plaintiffs' supplemental submissions, we learn that Dark Agnes was an "ignorant country girl" from France who had "knifed the man [her] father was forcing [her] to marry" and fled with "no regret" about trading a "life of drudgery for one of wandering and violence." Malmberg Supp. Decl. Ex. 5 at 7-8 (PDF pagination). She enjoyed "drinking, brawling, gambling, and fighting," *id.* at 8, and had never wept or been kissed, *id.* at 18-19. Combined with Dark Agnes's name and physical characteristics—"fine, tall, supple," remarkable red hair, dressed in a doublet, trunk-hose, and long boots—plaintiffs' work reveals a richly delineated character.

# III

Although a defendant's default is generally an admission of liability, "it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (granting default judgment in copyright case but requiring evidence on damages). Plaintiffs challenge the Magistrate Judge's recommendation to award only $9,000 in statutory damages and to deny permanent injunctive relief.

## A. Statutory Damages

The Magistrate Judge recommended a statutory damages award of $3,000 per character, reasoning such an amount would be sufficient to compensate plaintiffs and deter future infringement. *See* R&R at 60-76. Among other things, she considered that Sanchez was an individual artist with a small operation who had nonetheless continued his infringing conduct after he was notified of it. *Id.* at 67-71.

Plaintiffs object on several grounds, each based on the premise that the Magistrate Judge ignored the willfulness of Sanchez's infringement. Statutory damages normally range from $750 to $30,000 per work, but where a plaintiff proves willfulness, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000" per work. 17 U.S.C. § 504(c)(1)-(2). However, the enhancement is discretionary—a finding of willfulness does not require an award

above the $30,000 range. *Hollander Glass Texas, Inc. v. Rosen-Paramount Glass Co.*, 291 F. Supp. 3d 554, 560 (S.D.N.Y. 2018). Here, even if the Court were to find willful infringement, a statutory damages award of $3,000 would be appropriate under the factors set forth in *Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010).

The Court therefore adopts the Magistrate Judge's valuation of statutory damages at $3,000 per character. However, given the Court's conclusion that plaintiffs established liability for infringement based on seven separate characters, not three, the total damages shall be $21,000.

**B. Permanent Injunction**

The Magistrate Judge declined to recommend injunctive relief, reasoning primarily that plaintiffs failed to show irreparable harm. Plaintiffs argue that irreparable harm is established where, as here, there is a likelihood of continuing infringement.

Under 17 U.S.C. § 502(a), the court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." An injunction is appropriate if the plaintiff establishes past or imminent irreparable harm, money damages are inadequate, the balance of hardships tips in his favor, and the public interest would not be disserved. *Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Courts routinely address these concerns by awarding injunctive relief in

13

copyright cases where liability is established and there is a threat of continuing infringement. *See, e.g.*, *London-Sire Records v. Armstrong*, 2006 WL 2349615, at *2 (D. Conn. July 28, 2006); *Chanel, Inc. v. Louis*, 2009 WL 4639674, at *5 (E.D.N.Y. Dec. 7, 2009); *TigerCandy Arts, Inc. v. Blairson Corp.*, 2012 WL 760168, at *8 (S.D.N.Y. Feb. 23, 2012), R&R adopted, 2012 WL 1948816 (S.D.N.Y. May 30, 2012).

Here, there was a strong threat of continuing infringement. After receiving a DMCA takedown notice, Sanchez filed a counter-notice insisting his sculptures were legal and continued to sell them under thinly veiled, generic names. *See* Compl. Exs. A, G. For example, he changed "Conan the Barbarian" to "The Barbarian" and "Dark Agnes" to "Swordswoman." Compl. Ex. G. The Magistrate Judge speculated that he did so for the innocent purpose of avoiding trademark infringement. R&R at 69. Even if that were so—and the Court is skeptical—it also suggests Sanchez's belief that he could freely copy plaintiffs' characters so long as he avoided using their exact names. Such a belief increases the likelihood of ongoing infringement.

Plaintiff also submitted a photo of one of Sanchez's sculptures posted to Facebook months after this lawsuit began. The Magistrate Judge disregarded it because the statue appeared to have been supplied by someone other than Sanchez. However, the photo is no less an infringing copy than the characters themselves. It therefore shows that Sanchez's initial conduct has extended beyond his control and

14

caused additional instances of infringement, making it less likely that monetary damages alone will be adequate.

Given the threat of continuing infringement and that monetary damages alone are inadequate, injunctive relief is appropriate.

**Conclusion**

For the foregoing reasons, plaintiff CPI is awarded $3,000 in statutory damages and plaintiff JEH is awarded $18,000 in statutory damages. Sanchez is permanently enjoined from unlawfully manufacturing, selling, or publicly displaying characters that infringe on plaintiffs' copyrights and trademarks.

**SO ORDERED**

                                                                  /S/ Frederic Block
                                                                  FREDERIC BLOCK
                                                                  Senior United States District Judge

Brooklyn, New York
August 15, 2018